UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| ANGELICA M. THIERIOT, | No. C 10-04462 LB |
| Plaintiff, | **ORDER APPROVING CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF INCENTIVE AWARD** |
| v. | |
| CELTIC INS. CO., | |
| Defendant. | |
| _____/ | [ECF Nos. 23 and 29] |

### I. INTRODUCTION

Plaintiff Angelica M. Thieriot and Defendant Celtic Insurance Company agreed to settle this putative class action lawsuit in which Thieriot alleged that Celtic violated California Business and Professions Code § 17200 and California Insurance Code § 10199 (and was unjustly enriched) by not giving 30-days notice before increasing insurance premiums for certain health insurance policies. *See* Complaint, ECF No. 1; Order, ECF No. 17.[1] On January 13, 2011, the court granted Thieriot's unopposed motion to preliminarily approve the settlement in this case, conditionally certify the settlement class, appoint Thieriot as the class representative and her attorneys as class counsel, and direct that notice of the proposed settlement be disseminated to class members. ECF No. 17.

Having fully complied with the court's directives regarding class notice, and having received no

---

[1] Citations are to the clerk's electronic case file (ECF) with pin cites to the electronic page numbers at the top (as opposed to the bottom) of the page.

ORDER APPROVING SETTLEMENT (C 10-04462 LB)

1  objections to the settlement, Thieriot now moves the court to certify the settlement class and to grant
2  final approval of the proposed settlement of this matter.  ECF No. 29 at 4.

3  On April 25, 2011, the court held a duly-noticed fairness hearing to consider whether to grant
4  final approval to the settlement.  The court heard argument from the parties.

5  After considering all arguments, the court grants Thieriot's motion and finds as follows: (A) the
6  settlement class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b); (B)
7  Thieriot's claims are typical of the claims of class members generally, and she is an adequate
8  representative of the other members of the proposed class; (C) the firms of Schneider Wallace
9  Cottrell Brayton Konecky, LLP and Pillsbury & Levinson, LLP, collectively, have sufficient
10 experience and expertise in prosecuting class action cases, and (D) the settlement is fair, free of
11 collusion, and consistent with the plaintiff's fiduciary obligations to the class.

12 Additionally, Thieriot filed an unopposed motion for award of attorneys' fees and costs and an
13 incentive award for the named plaintiff.  ECF No. 23.  Because the requested amounts are
14 fundamentally fair, adequate and reasonable, the court awards $458,333.33 in attorneys' fees,
15 $5,874.93 in costs, and $25,000 as an incentive award to the named plaintiff.

## II. FACTS

17 Thieriot purchased major medical expense insurance coverage from Celtic in March
18 1998.  Complaint, ECF No. 1 at 3, ¶ 7.  Between 1998 and 2009, Celtic increased her insurance
19 premiums on numerous occasions.  *Id.* at 4, ¶ 13.  On October 1, 2010, Thieriot filed a complaint in
20 this case, alleging that the manner in which Celtic increased premium fees was illegal and that
21 Celtic's collection of the increased amounts violated California's Notification Act, California
22 Insurance Code § 10199 *et seq.*, and California Business & Professions Code § 17200 *et seq. Id.* at
23 7-9, ¶¶ 34-44.  Thieriot also asserted a claim for unjust enrichment based upon Celtic's collection of
24 the excessive, unlawful fees. *Id.* at 10, ¶¶ 45-46.

25 Celtic has denied the allegations in the complaint.  Answer, ECF No. 5.  The parties engaged in
26 settlement discussions, including a mediation session with Judge Ronald M. Sabraw (Ret.).  Wolf
27 Decl., ECF No. 29-1 at 4, ¶ 6.

28 Prior to the mediation, the parties exchanged position papers and information that established the

value of the claims in this case. *Id.* at 4, ¶ 7. Celtic's documentation revealed that over the course of the four-year statute-of-limitations period, it had collected approximately $806,463 in premium increases that Thieriot alleges violated the Notification Act. *Id.*[2]

In December 2010, as a result of the mediator-assisted settlement negotiations, the parties executed a settlement agreement. *Id.* at 5, ¶ 8 & Exh. A, ECF No. 29-1 at 8-15. The agreement provides that, in exchange for Thieriot releasing the claims against Celtic, the company would establish a settlement fund of $1,375,000. Exh. A, ECF No. 29-1 at 8.

In summary form, the settlement agreement is as follows. Thieriot agreed to release all claims against Celtic on behalf of herself and the settlement class, which is defined as:

> All individuals in California who (i) were insured – at any time from October 1, 2006 to October 1, 2010 – under any group master policy or other contract issued by Celtic which provides hospital, medical, or surgical benefits; (ii) were asked by Celtic to pay insurance premiums in excess of the premium amount initially agreed upon; and (iii) paid Celtic insurance premiums in excess of the premium rate in effect as of October 1, 2006 for existing policyholders, or, for contracts which were initiated after October 1, 2006, the initial premium rate.

*Id.* at 9. Celtic will contribute a total of $1,375,000 to the settlement fund. *Id.* at 8. The settlement funds are allocated to the following categories: (A) restitution (in the form of refunds of the excess insurance premiums during the four-year statute of limitations period) totaling $806,463, plus 7% annual interest; (B) attorneys' fees, which cannot exceed one-third of the settlement fund (or $458,333) and which are subject to court approval; (C) administrative costs of the settlement; and (D) an incentive award for Thieriot if approved by the court. *Id.* The settlement will be administered by an independent claims administrator, Garden City Group. *Id.* at 10. Any excess funds will be distributed as a cy pres award to three specified charities. *Id.* at 8.

The court held a hearing on the parties' joint motion for provisional approval and issued an order granting provisional class certification, appointing the class representative and class counsel, preliminarily approving the settlement plan, approving the plan for notice to the class, and setting the schedule for the final approval process (including Thieriot's attorney's fees and incentive award). ECF No. 17.

---

[2] Although the documents submitted stated that the amount was $860,463, at the final fairness hearing, counsel clarified that the total amount was about $806,463 without interest.

Following the hearing and issuance of the order, Celtic provided a list of class members and their addresses to Garden City Group, which mailed notices to all class members on January 20, 2011. Keough Decl., ECF No 29-2 at 2-3, ¶¶ 3, 5. After conducting an address update search using the National Change of Address database and other follow-up searches, 386 out of 390 notices were ultimately delivered. *Id.* at 2-3, ¶¶ 4, 6. As of March 29, 2011, no objections had been received. *Id.* at 4, ¶ 8.

On March 1, 2010, Thieriot filed an unopposed motion for attorneys' fees, costs, and an incentive award. ECF No. 23. On March 30, 2011, Thieriot filed an opposed motion requesting final approval of the settlement. ECF No. 29.

At the final fairness hearing conducted on April 21, 2011, counsel confirmed that no subsequent objections had been received.

## III. DISCUSSION

### A. Jurisdiction

This court has jurisdiction under 28 U.S.C. § 1332(c) and (d)(2).

### B. Notice

The court finds that the notice to the settlement class, as described in the court's earlier order provisionally approving the class, provided the best practicable notice to the members of the class (reaching 386 of 390 class members) and satisfied the requirements of due process.

### C. Certification of Class

For settlement purposes only, the parties proposed certification of the following class:

> All individuals in California who (i) were insured – at any time from October 1, 2006 to October 1, 2010 – under any group master policy or other contract issued by Celtic which provides hospital, medical, or surgical benefits; (ii) were asked by Celtic to pay insurance premiums in excess of the premium amount initially agreed upon; and (iii) paid Celtic insurance premiums in excess of the premium rate in effect as of October 1, 2006 for existing policyholders, or, for contracts which were initiated after October 1, 2006, the initial premium rate.

*See* Settlement Agreement, ECF No. 29-1 at 8.

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 26(a) and (b). In a settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based

1  on information revealed at trial. *See Staton v. Boeing*, 327 F.3d 938, 952-53 (9th Cir. 2003) (quoting
2  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d
3  1011, 1019 (9th Cir. 1998) (same).

4  The court finds that the proposed settlement class here meets the requirements of Federal Rule of
5  Civil Procedure 23(a) and (b).

6  **1. Rule 23(a)**

7  Class certification requires the following: (1) the class must be so numerous that joinder of all
8  members individually is "impracticable;" (2) there are questions of law or fact common to the class;
9  (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the
10 class; and (4) the person representing the class must be able to fairly and adequately protect the
11 interests of all class members. *See* Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

12 Here, the factors support class certification. First, there are 390 class members, which makes
13 joinder is impracticable. *See Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on*
14 *other grounds*, *County of L.A. v. Jordan*, 459 U.S. 810 (1982). Second, the class members' claims
15 all involve common facts about Celtic's increased insurance premiums without the prior notice
16 required by the California Insurance Code. Similarly, the class members' legal issues involve the
17 same legal theories about compliance with the insurance code. Third, Thieriot's claims are typical
18 (and indeed seem identical) to the claims (and injuries) of other class members: all involve insurance
19 premium increases allegedly imposed without proper prior notice under the insurance code. *See*
20 *Hanlon*, 150 F.3d at 1019-20 (claims are typical if they are reasonably coextensive with that of
21 absent class members; they need not be substantially identical). Fourth, the parties agree, and the
22 court finds, that Thieriot is able to fairly and adequately protect the interests of all class members.
23 The factors relevant to a determination of adequacy are as follows: (1) the absence of potential
24 conflict between the named plaintiff and the class members; and (2) counsel chosen by the
25 representative parties is qualified, experienced and able to vigorously conduct the proposed
26 litigation. *Id*. at 1020. The court is satisfied that those factors exist here. As discussed already, the
27 named plaintiff has shared claims and interests with the class, and the parties jointly maintain that
28 she has no conflicts of interest with them. Also, she has obtained qualified and competent counsel.

*See* Wolf Decl., ECF No. 29-1, at 2-4, ¶¶ 3-4; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992).

**2. Rule 23(b)(3)**

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022. The court finds that certification is appropriate under Rule 23(b)(3). Questions of law and fact common to class members predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). The case involves multiple claims for relatively small sums (on average $2,462), *see* Wolf Decl., ECF No. 29-1 at 5, ¶ 11, and a class action is superior to an alternative method for fairly and efficiently adjudicating the claims. *See Amchem Products*, 521 U.S. at 625; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (class action appropriate because "if plaintiffs cannot proceed as a class, some -- perhaps most -- will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover"). Also, no class member has expressed an interest in proceeding independently, and no apparent obstacles exist that would make managing a class action difficult. *See* Fed. R. Civ. P. 23(b)(3)(A), (C) and (D).

**3. Conclusion: Certification is appropriate**

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), the court certifies the class set forth above solely for the purpose of entering a settlement in this matter.

**D. Appointment of Class Representative and Class Counsel**

For the reasons set forth in the previous section, the court appoints Angelica Thieriot to serve as the class representative. The court finds specifically that she has claims that are typical of the claims of class members generally and is an adequate representative of the other members of the proposed class. The court also finds that the firms of Schneider Wallace Cottrell Brayton Konecky, LLP and Pillsbury & Levinson, LLP, collectively, have sufficient experience and expertise in prosecuting class action cases and appoints these firms as class counsel for settlement purposes only.

**E. Approval of Settlement Agreement**

In reviewing the proposed settlement, the court need not address whether the settlement is ideal

or or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with the plaintiff's fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1027. The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that settlement is appropriate. First, Thieriot has a strong case. Second, litigation poses risks, and Celtic denies liability. (The settlement agreement specifically provides that Celtic denies liability. *See* Exh. 1 at 1.) In any event, even with a strong case, litigation entails expense. Third, the amount offered in settlement appears sufficient to cover the excess premiums during the four-year-limitations period before Thieriot filed the complaint, the administrative costs of settlement, and attorney's fees. That compares favorably to the potential outcome at trial, particularly given what Thieriot's counsel believes is the difficulty of securing administrative penalties for violating a notice statute. *See* Wolf Decl., ECF No. 29-1 at 5-6, ¶ 12. Also, the settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediator at JAMS. Finally, there were no objections or opt-outs from any class member.

In sum, the court finds that viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982). The court thus approves the settlement agreement.

**F. Attorneys' Fees and Named Plaintiff's Incentive Award**

**1. Legal Standard**

Rule 23(h) of the Federal Rules of Civil Procedure provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

parties' agreement." Attorneys' fees provisions included in proposed class action agreements must be "fundamentally fair, adequate and reasonable." *Staton*, 327 F.3d at 964.

In "common fund cases," a court has discretion to award attorneys' fees either as a percentage of such common fund or by using the lodestar method. *Id.* at 967-968. A district court in the Northern District reviewed a number of cases and concluded that using the lodestar method in common fund cases did not achieve the stated purposes of proportionality, predictability and protection of the class but, instead, encouraged abuses such as unjustified work and protracting the litigation. *See In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). Additionally, the percentage-of-the-fund method is appropriate where – as here – the amount of the settlement is fixed without any reversionary payment to the defendant. *See Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16, 2011). In the Ninth Circuit, the "benchmark" for attorneys' fees in common fund class actions is 25% of the common fund. *Staton*, 327 F.3d at 968. But the rate ultimately selected must be supported by findings that take into account all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

**2. Attorneys' Fees**

Class counsel seeks 33% of the settlement fund as award of attorneys' fees. Motion, ECF No. 23 at 14. Courts in the Ninth Circuit look to the following factors when determining what a proper percentage is for an award of attorneys' fees: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-52.

Applying these factors, the court finds that an upward adjustment of the benchmark to 33% is warranted in this case.

*i. Results Achieved*

Class counsel obtained quality results. The settlement amount exceeds the amount required to make each class member whole (excluding interest) even after deducting the requested attorneys'

fees, costs, and incentive award. Accordingly, this factor favors an upward adjustment to the benchmark.

### ii. Litigation Risk

Class counsel assumed some risk in bringing a novel suit against a sophisticated party. On the other hand, the named plaintiff paid more than $75,000 in legal fees. This factors minimally favors an increase in the benchmark rate.

### iii. Non-monetary Relief

No non-monetary relief was secured. This factor does not favor an upward adjustment to the benchmark.

### iv. Percentage Rate Relative to Market Rate

The parties did not provide information as to the market rate. While the court does not find that this factor supports an upward adjustment, the court does note that it is common practice to award attorneys' fees at a higher percentage than the 25% benchmark in cases that involve a relatively small – i.e., under $10 million – settlement fund. *See Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. Jul. 27, 2010) (collecting cases).

### v. Contingent Nature of Representation and Opportunity Cost

It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir.1994). Class counsel brought this claim only on a partially contingent basis. Thus, this factor partially favors an increase in the benchmark rate.

### vi. Class Reaction

The fact that no members of the 390-person class objected to the proposed 33% fee award– which was also communicated in the notice – supports an increase in the benchmark rate. *See In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008) (finding factor favored approval where no objections to fee where raised in response to 57,630 copies of notice being sent).

### vii. Lodestar Cross-Check

A lodestar cross-check also supports the reasonableness of increasing the benchmark rate. Under

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  the lodestar method, the lodestar amount is calculated by multiplying the number of hours
2  reasonably expended by counsel by a reasonable hourly rate. *Hanlon.*, 150 F.3d at 1029. "The
3  lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *In*
4  *re Rite Aid Corp. Sec Litig.*, 396 F.3d 294, 306 (3d Cir.2005); *see Young v. Polo Retail, LLC*, No.
5  C-02-4546 VRW, 2007 WL 951821, at *6 (N. D. Cal. Mar. 28, 2007).

6  Class counsel's billing records reflect the following hourly rates: $425 for attorney Celia
7  Jackson; $425 for attorney Richard Shively; $475 for attorney Phillip Pillsbury, Jr.; $475 for
8  attorney Michael Mckay; $575 for attorney Adam Wolf; $575 for attorney Garrett Wotkyns; $625
9  for attorney Mark Johnson; $675 for attorney Todd Schneider; andbetween $125-$210 for paralegal
10 work. Exh. A, ECF No. 25; Exh. A., ECF No. 27.  Class counsel have provided affidavits attesting
11 to the reasonableness of their hourly rates and the qualifications of the attorneys. Wolf Decl., ECF
12 No. 24 at 4-7, ¶¶ 5-10, 13; Jackson Decl., ECF No. 27 at 2-3, ¶¶ 4-6, 9.  The court finds the hourly
13 rates to be reasonable. *See*, *e.g., Cherry, et al. v. The City College of San Francisco*, Docket No. C
14 04-4981 WHA, ECF No. 673 (Apr. 13, 2006 order) (finding Schneider & Wallace's rates to be
15 reasonable and consistent with the market).  The detailed time records reflect 473.2 hours expended.
16 Exh. A, ECF No. 25; Exh. A., ECF No. 27.   The court finds these hours to have been reasonably
17 expended.

18 In total, as of February 24, 2011, class counsel has billed 473.2 hours for a total of $215,639.50.
19 *Id.*  Class counsel estimates that the total will rise by about $20,000 by the end of the litigation.
20 Wolf Decl., ECF No. 24 at 7, ¶ 14; Jackson Decl., ECF No. 27 at 3-4, ¶ 10.  Based on these
21 numbers, the requested award represents a multiplier of about 1.94.  This multiplier falls within the
22 customary range. *See Vizcaino*, 290 F.3d at 1051 n. 6 (describing appendix to opinion, finding a
23 range of multipliers in common fund cases "of 0.6-19.6, with most (20 of 24, or 83%) from 1.0-4.0
24 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range").  Thus, the lodestar cross-check
25 supports a fee award of 33%.

26 On balance, the court finds that the aforementioned factors support a fee award of 33% of the
27 settlement fund.
28 ///

### 3. Costs

Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ.P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Class counsel seeks reimbursement of $5,874.93 in litigation expenses. Motion, ECF No. 23 at 12. Class counsel submitted detailed records supporting this request and the itemized costs are reasonable. Wolf Decl., ECF No. 24 at 7, ¶ 15; Exh. B., ECF No. 25-1, at 2; Jackson Decl., ECF No. 27 at 3, ¶ 8; Exh. A., ECF No. 27 at 20.

### 4. Incentive Award for Thieriot

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).

Thieriot requests an incentive award of $25,000. Motion, ECF No. 23 at 12. Thieriot sought advice from Pillsbury & Levinson LLP in July 2009 as to the premium increases. Jackson Decl., ECF No. 27 at 4, ¶ 12. This ultimately resulted in almost 400 people obtaining relief. Additionally, Thieriot paid more than $75,000 in legal fees and costs to finance pre-litigation efforts before counsel agreed to prosecute the case a class action on a contingency fee basis. *Id.* at 4, ¶ 14. While Thieriot's counsel has agreed to reimburse her for these fees if this motion is granted, *id.*, Thieriot's actions protected the interests of the 390-person class and represented a significant financial risk. *See Rodriguez*, 563 F.3d at 958. Additionally, as noted above, even after deducting the requested award from the settlement amount, sufficient funds remain to make the entire class whole. Therefore, although on the high end of an acceptable incentive award, the court awards Thieriot an

1 incentive award of $25,000. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.
2 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75
3 million settlement); *Hopson v. Hanesbrands, Inc.*, No. No. CV-08-0844 EDL, 2009 WL 928133, at
4 *10 (N.D. Cal. Apr.3, 2009) (approving $5,000 award to one member of 217 member class from
5 $408,420 settlement amount); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862, at
6 *16-17 (N.D. Cal. Jan.26, 2007) (approving $25,000 award to each of four plaintiff representatives
7 of 13,176 member class from $45 million settlement amount); *Van Vranken*, 901 F.Supp. at 299
8 (approving $50,000 award in $76,723,213.26 settlement amount).

## V.  CONCLUSION

Based on the foregoing reasons, the court **GRANTS** Thieriot's unopposed motion seeking certification of the settlement class and final approval of the proposed settlement of this class action on the terms set forth in the proposed settlement agreement.  Additionally, the court **GRANTS** Thieriot's unopposed motion for award of attorneys' fees and costs and an incentive award for the named plaintiff.  The court awards $458,333.33 in attorneys' fees, $5,874.93 in costs, and  $25,000 as an incentive award to the named plaintiff.

This disposes of ECF Nos. 23 and 29.

**IT IS SO ORDERED.**

Dated: April 21, 2011

_____
LAUREL BEELER
United States Magistrate Judge